### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ROBERT PEARSON,

      Petitioner,

v.                                                          Case No. 8:05-cv-699-T-17TGW

JAMES R. MCDONOUGH[1],

      Respondent.

_____/

### ORDER

      This cause is before the court upon Petitioner Robert Pearson's ("Pearson") Second

Amended Petition[2] for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Pearson

challenges his 1998 convictions entered by the Thirteenth Judicial Circuit Court,

Hillsborough County, Florida.  (Dkt. 9).  Respondent has filed a response to the petition

(Dkt. 15).[3]

### Background

      Pearson was charged in four counts of a five count Information dated November 13,

---

[1] In his petition, Pearson names James V. Crosby, Jr., former Secretary of the Department of Corrections, as the party respondent in this case.  As of the date of this order, James R. McDonough is the Secretary of the Department of Corrections.  Accordingly, pursuant to Rule 25 of the Federal Rules of Civil Procedure and Rule 2 of the Rules Governing Section 2254 Cases, the Court will substitute McDonough as Respondent.  *See* Fed. R. Civ. P. 25(d); Rule 2(a), Rules Governing Section 2254 Cases (2006).

[2] Pearson's original § 2254 petition was received by the Court on April 12, 2005.  (Dkt. 1).  By order entered on April 14, 2005, the Court directed Pearson to file an amended petition containing a brief statement of facts supporting his claims.  (Dkt. 2).  On May 9, 2005, the Court received Pearson's amended petition.  (Dkt. 4).  By order entered on May 26, 2005, the Court dismissed the amended petition and directed Pearson to file a second amended petition.  (Dkt. 6).  Pearson complied and his second amended petition (Dkt. 9) is the operative petition now before the Court for review.

[3] The Court notes that Pearson filed a motion to extend time to reply to Respondent's response.  (Dkt. 16).  By order entered on October 20, 2005, the Court granted Pearson's motion.  (Dkt. 17).  However, as of the date of this Order, no reply has been filed.

1997, with burglary of a dwelling (Count 1), grand theft (Count 2), attempted carjacking (Count 4), and obstructing or opposing an officer without violence (Count 5). (Dkt. 13, Ex. 16, Vol. I, pp. 21-24).[4]  Represented by court-appointed counsel, Pearson proceeded to jury trial on August 31, 1998. (Dkt. 13, Ex. 16, Vol. I, p. 74). On September 1, 1998, a jury found Pearson guilty on all four counts.  (Dkt. 13, Ex. 16, Vol. I, pp. 103-04).   On September 23, 1998, the state trial court sentenced Pearson as a habitual violent felony offender to a term of imprisonment of 40 years on Counts 1 and 4, a term of imprisonment of ten years on Count 2, and a term of 60 days in county jail on Count 5, all to run concurrently with each other. (Dkt. 13, Ex. 16, Vol. I, pp. 110-21).

Pearson timely filed a direct appeal. (Dkt. 13, Ex. 16, Vol. I, p. 127).  The state district court of appeal per curiam affirmed Pearson's convictions and sentences on December 17, 1999, in Case No. 98-04149. (Dkt. 13, Ex. 3).  See Pearson v. State, 748 So.2d 274 (Fla. 2d DCA 1999) [Table].  The mandate issued on January 11, 2000.  (Dkt. 13, Ex. 4).  Pearson did not file a petition for writ of certiorari in the United States Supreme Court.  (Dkt. 9).

On January 8, 2001,[5] Pearson signed his Rule 3.850 motion for post-conviction relief. (Dkt. 13, Ex. 5). On January 17, 2001, Pearson filed a supplemental motion for post-conviction relief. (Dkt. 13, Ex. 6). By order rendered on August 9, 2001, the state trial

---

[4] Respondent has filed with its response the record on direct appeal from the state district court of appeal.  (Dkt. 13, Ex. 16).  The page numbers of references in this exhibit are designated by the page numbers located in the bottom right-hand corner of the page.

[5] For purposes of calculating the limitations period under the AEDPA, the Court will give Pearson the benefit of the "mailbox rule" and consider his § 2254 petition and documents related thereto as "filed"on the date Pearson signed and delivered them to prison authorities for mailing.  See Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999). The Court will also give Pearson the benefit of this rule with respect to his state court filings when calculating the limitations period under § 2244(d).

court denied the motions in part and directed the State to respond on the remaining grounds. (Dkt. 13, Ex. 7). The State filed its written response and requested an evidentiary hearing be held on the remaining grounds. (Dkt. 13, Ex. 8). An evidentiary hearing was held on April 23, 2003. (Dkt. 13, Ex. 9). Following the hearing, the State filed a written response to the claims addressed at the hearing. (Dkt. 13, Ex. 10). By order rendered on October 21, 2003, the state trial court denied Pearson's remaining claims. Pearson appealed this denial to the state district court of appeal which per curiam affirmed the denial of the Rule 3.850 motion and supplemental post-conviction motion on March 11, 2005. (Dkt. 13, Ex. 14). The mandate issued on April 7, 2005. (Dkt. 13, Ex. 15).

The instant second amended *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was presented to prison authorities for mailing by Pearson on June 28, 2005, and received by this Court on July 5, 2005. The petition is timely. Upon review of the record, Pearson's petition must be DENIED.

### Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

3

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). "The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions." *Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000)). A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. *See Jones v. McDonough*, 2007 WL 174442 at *1 (11th Cir., Jan. 24, 2007); *Putnam*, 268 F.3d at 1241. A state court makes an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of a petitioner's case, or unreasonably extends or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. *See id.* "[A] federal habeas court may not issue the writ under the reasonable application clause simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. An "unreasonable

4

application" is an "objectively unreasonable" application." *Putnam*, 268 F.3d at 1241.

State courts need not explain their merits rulings to qualify for deference under the AEDPA. *Jones*, 2007 WL 174442 at *2. Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dep't of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002) ("[T]he statutory language [in § 2254(d)(1)] focuses on the result, not the reasoning that led to the result, and nothing in that language requires the state court adjudication that has resulted in a decision to be accompanied by an opinion that explains the state court's rationale). "All that is required under § 2254(d)(1) is an adjudication on the merits, not a full state court opinion." *Parker v. Secy for the Dep't of Corr.*, 331 F.3d 764, 776 (11th Cir. 2003). "Even a summary, unexplicated rejection of a federal claim qualifies as an adjudication entitled to deference under § 2254(d)(1)." *Herring v. Sec'y for the Dep't of Corr.*, 397 F.3d 1338, 1347 (11th Cir. 2005). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

Since Pearson's conviction was entered after the AEDPA was enacted, his petition is subject to the provisions thereof. Because a state court initially considered the issues raised in the petition, § 2254(d) governs the review of Pearson's claim. *See Mobley v. Head,* 267 F.3d 1312, 1316 (11th Cir. 2001).

### Exhaustion and Procedural Default

Before this Court may grant habeas relief to a state prisoner under 28 U.S.C. § 2254, a petitioner must exhaust all state court remedies that are available for challenging

his conviction, either on direct appeal or in a state post-conviction motion. *See* §

2254(b)(1)(A), (c); *Keinz v. Crosby*, 2006 WL 408686 (11th Cir. 2006); *O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 842 (1999). "[T]he state prisoner must give the state courts an

opportunity to act on his claims before he presents those claims to a federal court in a

habeas petition." *O'Sullivan,* 526 U.S. at 842; *see also Henderson*, 353 F.3d at 891 ("A

state prisoner seeking federal habeas relief cannot present a federal constitutional claim

in federal court unless he first properly presented the claim to the state courts) (citations

omitted)). A § 2254 petitioner "shall not be deemed to have exhausted the remedies

available in the courts of the State ... if he has the right under the law of the State to raise,

by any available procedure, the question presented." *Pruitt v. Jones*, 348 F.3d 1355, 1358

(11th Cir. 2003) (citing 28 U.S.C. § 2254(c)). In so doing, a state prisoner "'must give the

state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process,' including review by

the state's court of last resort, even if review in that court is discretionary." *Pruitt*, 348 F.3d

at 1358-59 (citing O'Sullivan, 526 U.S. at 845).

"The teeth of the exhaustion requirement comes from its handmaiden, the

procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

Pursuant to this doctrine, "[i]f the petitioner has failed to exhaust state remedies that are

no longer available, that failure is a procedural default which will bar federal habeas relief,

unless either the cause and prejudice or the fundamental miscarriage of justice exception

is applicable." *Id.* (citing O'Sullivan, 526 U.S. at 845-6). Under the first exception, to

establish cause for a procedural default, a petitioner "must demonstrate that some objective

factor external to the defense impeded the effort to raise the claim properly in state court."

6

Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999); see also Murray v. Carrier, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. See United States v. Frady, 456 U.S. 152 (1982). In other words, he must show that there is at least a reasonable probability that the outcome of the proceeding would have been different. See Henderson, 353 F.3d at 892 (citing Wright, 169 F.3d at 703; Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002)).

Under the second exception, a federal court may review a procedurally defaulted claim if such review is necessary to correct a fundamental miscarriage of justice. See Henderson, 353 F.3d at 892 (citing Murray, 477 U.S. at 495-96). "A 'fundamental miscarriage of justice' occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent." Id. This exception relates to a petitioner's "actual" rather than "legal" innocence. See Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing Calderon v. Thompson, 523 U.S. 538, 559 (1998); Murray, 477 U.S. at 495-96)). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Panarites v. Crosby, 2006 WL 196939 at *5 (M.D. Fla., Jan. 24, 2006) (citing Schlup v. Delo, 513 U.S. 298, 327 (1995)). Moreover, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Johnson, 256 F.3d at 1171 (citing Calderon, 523 U.S. at 559 (internal quotation omitted)).

### Standard for Ineffective Assistance of Counsel Claims

In six of the claims for relief presented in the instant petition, Pearson asserts that

his right to effective assistance of counsel was violated.  The Sixth Amendment protects a defendant's right to the effective assistance of counsel during criminal proceedings against him.  To prevail on a claim of ineffective assistance of counsel, Pearson must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" considering the circumstances as they existed at the time of representation.  *Strickland,* 466 U.S. at 687-88.  This requires him to overcome a strong presumption that his attorney's performance was within the range of competence demanded of attorneys defending criminal cases.  *Id.* at 689.  Second, even if Pearson can show that counsel performed incompetently, he must also show that he was prejudiced in such a manner that, but for counsel's errors, there exists a reasonable probability that the outcome of the proceeding would have been different.  *Id.* at 688, 694.  A "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings.  *Id.* at 694.

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'"  *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).  "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take."  V*an Poyck v. Fla. Dept. of Corrections,* 290 F.3d 1318, 1322 (11th Cir. 2002) (citing *Chandler*, 218 F.3d at 1315).  Counsel's trial strategy cannot be second guessed, as "judicial scrutiny of counsel's performance must be highly

deferential." *Chandler,* 218 F.3d at 1314 (quoting *Strickland,* 466 U.S. at 689). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright,* 709 F.2d 1443, 1445 (11th Cir. 1983). Moreover, where the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment. As counsel's trial strategy is presumptively reasonable, the determination is not "that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not do a specific act." Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Chandler,* 218 F.3d at 1314-15.

## Discussion

### Ground One

In his first claim, Pearson alleges that the state trial court erred by denying his motion for judgment of acquittal on the carjacking charge. He contends that the evidence adduced at trial was insufficient to sustain this charge and that the state trial court's error resulted in a violation of his rights under the Sixth and Fourteenth Amendments. Beyond these scant allegations, Pearson does not present any factual basis to support this claim.

Pearson presented this issue on direct appeal. However, he did not allege a violation of his federal constitutional rights, the claim he now presents in the instant § 2254. Rather, he presented his claim in state law terms only. Issues presented in a federal habeas corpus petition must have been fairly presented to the state courts and exhausted prior to presentation in a § 2254 petition. *See* 28 U.S.C. § 2254(b)(1); *McNair v. Campbell,* 416 F.3d 1291, 1302 (11th Cir. 2005). To exhaust a claim sufficiently, a petitioner must

have presented the state court with the particular legal basis for relief in addition to the facts supporting it. *See Diaz*, 2006 WL 3469522 at *1 (citing *Kelley v. Sec'y for Dep't of Corrs.*, 377 F.3d 1317 (11th Cir. 2004) (internal citations omitted)).  A petitioner must present his claims to the state courts such that they have the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." *See Kelley*, 377 F.3d at 1344 (citing *Picard v. Connor*, 404 U.S. 270 (1971)).  Thus, the prohibition against raising non-exhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific factual contentions that might support relief. *Id.*

In the instant case, Pearson did not present the federal dimension of the claim presented in Ground One to the state courts at trial or on direct appeal.  Thus, he deprived the state courts of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."   *See Bucklon v. Crosby*, 2006 WL 2990449 at *3 (M.D. Fla., Oct. 19, 2006); *O'Sullivan*, 526 U.S. at 845. A § 2254 petition cannot be granted unless a petitioner has exhausted his available state court remedies. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'").   Pearson's state law arguments presented at trial and on direct appeal do not suffice to meet the exhaustion requirement. *See Bucklon*, 2006 WL 2990449 at *3 (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). Thus, this claim is not exhausted for purposes of federal habeas review.

However, were Pearson to now attempt to re-raise this claim in state court on federal

grounds, the claim would be procedurally barred. *See Coleman v. Thompson*, 501 U.S.
722 (1991). Portions of a petitioner's claim that are not exhausted but would clearly be
barred if returned to state court must be dismissed. *See Tower v. Phillips*, 7 F.3d 206, 210
(11th Cir. 1993). "An issue that was not properly presented to the state court which can no
longer be litigated under state procedural rules is considered procedurally defaulted, i.e.,
procedurally barred from federal review." *Cobbs v. McDonough*, 2006 WL 2092381 at *8
(M.D. Fla., July 26, 2006) (citing *O'Sullivan*, 526 U.S. at 839-40, 848). "Issues that could
have been, but were not, raised on direct appeal are not cognizable through collateral
attack." *Harvey v. Dagger*, 656 So.2d 1253, 1256 (Fla. 1995). Because Pearson could
have preserved and raised a federal constitutional claim regarding the denial of his motion
for judgment of acquittal on direct appeal, he was precluded from doing so collaterally in
a Rule 3.850 motion for post-conviction relief. *See e.g., Childers v. State*, 782 So.2d 946,
947 (Fla. 4th DCA 2001) ("The law is clear that where an issue could have been raised on
direct appeal, it is not the proper subject for a Rule 3.850 motion.") (citations omitted). This
issue is now procedurally barred from review in the state courts because the state
procedural rules do not provide for a second direct appeal. *See Taylor v. McDonough*,
2007 WL 189389 at *13 (N.D. Fla., Jan. 23, 2007); Fla. R. Crim. P. 3.850(b), (g). Thus, this
Court cannot consider Pearson's claim unless he can make a showing that the cause and
prejudice or the fundamental miscarriage of justice exception is applicable. *See Jones*, 256
F.3d at 1138; *O'Sullivan,* 526 U.S. at 845-6.

Pearson does not present any argument to demonstrate cause or prejudice that
would excuse his default. Moreover, he has neither alleged nor shown that the fundamental

11

miscarriage of justice exception applies. Absent such a showing, a federal habeas court should not discuss the merits of a claim that has been procedurally defaulted in state court. *See Surrency v. Hadi*, 2006 WL 3469534 at *6 (M.D. Fla., Nov. 30, 2006) (citing *Kight v. Dugger*, 50 F.3d 1539, 1543 (11th Cir.1995)). Accordingly, Ground One of the instant petition is procedurally barred and relief will be denied. *See Amoroso v. McDonough*, 2006 WL 2507618 at *3 (M.D. Fla., Aug. 29, 2006); *Kelley*, 377 F.3d at 1344.

**Ground Two**

Pearson claims that his judgment and sentence violate his right to due process under the Fourteenth Amendment. Specifically, he contends that his sentencing was improper because the prosecution failed to "establish by a preponderance of the evidence that [he] qualified for an enhanced sentence." Respondent contends that this claim must be denied because it does not concern a matter of federal constitutional magnitude.

To the extent that Pearson is challenging the State's application of its own sentencing guidelines, his claim is not cognizable in this § 2254 action. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Carrizales v. Wainwright*, 699 F.2d 1053, 1054-55 (11th Cir. 1983). A federal writ of habeas corpus is only available in cases of federal constitutional error. *See Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir. 1990). This limitation on federal habeas review applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Willeford v. Estelle*,

538 F.2d 1194, 1198 (5th Cir. 1976).[6] The Eleventh Circuit has stated that "[i]n the area of state sentencing guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures." *Branan*, 861 F.2d at 1508.

In the instant case, although Pearson's claim is couched in terms of due process, the substance of the claim alleges an error by the state court in the application of its own sentencing law. Thus, because it is not the province of this Court to "reexamine state-court determinations on state-law questions," the claim is not cognizable in this § 2254 petition and must be denied. *See Jones v. Sec'y, Dep't of Corr.*, 2006 WL 2724892 at *3 (M.D. Fla., Sept. 22, 2006) (finding that, because petitioner's claim challenging how Florida law designated him as a habitual offender was a matter of state law, his sentencing claim was not cognizable on federal habeas review); *Estelle*, 502 U.S. at 67.

**Ground Three**

Pearson alleges that his attorney was ineffective in failing to remove a biased juror. He contends that after the questioning of prospective juror #20, Dorothy Morris ("Morris"), by his attorney, the court attempted to rehabilitate this juror who had expressed a presumption that Pearson was guilty. Counsel attempted to strike Morris for cause but the court refused to allow counsel to do so. Pearson alleges that counsel had one peremptory strike remaining that he could have used to strike Morris but failed to do so and instead, accepted her as a member of the jury. He contends that both the court and counsel were

---

[6] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

obligated to strike Morris and that failure to do so was fundamental error. As a result of counsel's actions, Pearson was denied his right to an impartial jury.

Pearson presented this claim to the state trial court in his Rule 3.850 motion. (Dkt. 13, Ex. 5). The state trial court denied the motion for post-conviction relief. Pearson appealed the state trial court's adverse decision which was affirmed by the state district court of appeal. (Dkt. 13, Ex. 14). Thus, this claim was exhausted and is properly before the Court in the instant petition. *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (Florida state remedies are exhausted after appeal to the district court of appeal from denial of a collateral attack upon a conviction).

In his §2254 petition, Pearson premises his claim on the following facts[7]:

During voir dire, Juror Number 20, Dorthy [sic] Morris, informed the court of the following[:] she or someone she knew had recently been the victim of a car theft. [Ten] years ago her husband and father had been burglarized and the perpetrators were never caught. She did not "think" this would affect her ability to sit fairly and impartially in this case. She felt that with these charges (petitioner's charges) something had to happen. "Something happened; someone was arrested."

Counsel moved the court to strike Ms. Morris for cause. The court refused, and stated that they would talk to her. During subsequent questioning of Morris, the trial court appeared to have lead [sic] Morris into rehabilitation. However, afterwards, in response to questions posed by defense counsel, Morris states, "Well, you just don't get arrested standing on the street corner." Counsel eventually asked Morris did she think her initial inclinations that the petitioner must have done something wrong would come into play while she was listening to evidence. She responded with, "I don't think it would prejudice me ... but until you sit in court, you don't know."

At this point to [sic] court again attempted to rehabilitate Morris with the following questions: "Do you think you have an open enough mind so that you can listen to the evidence that's being presented to you? And if the State doesn't meet its

---

[7] These facts are identical to the facts presented in support of Pearson's Rule 3.850 motion.

burden, could you find the petitioner not guilty?

Morris responded, "If they didn't – if they didn't prove it." No additional questions were asked of Morris, she left the bench. Counsel moved again to have Morris stricken for cause, but to no avail.

During jury selection, with one preemptory [sic] challenge remaining, counsel accepted Morris, rather than striking her.

Petitioner contends that as a matter of law, the record demonstrates a prima facie denial of his constitutional right to an impartial jury and trial, and a presumption of innocence until proven guilty. The trial court, and defense counsel were equally obligated to strike Morris. Failure to do so was fundamental error.

Ms. Morris unequivocally voiced her personal presumption of guilty until proven innocent. She stated that she didn't know if she could not be prejudice [sic] until she sat in the trial. The trial court's attempts to rehabilitate Morris consisted of two questions: (1) Did she think she could have an open mind to the evidence? This question was never answered; question (2) Could she find the petitioner not guilty of the State did not meet its burden? Petitioner contends that Morris's "if they didn't prove it" response was a request for clarity, rather than a response to the question. But even if it was an affirmative response, it was not sufficient to rehabilitate Morris, because an ability to find the petitioner not guilty after the presentation of the State's case is not relevant to an ability to presume the petitioner not guilty prior to the presentation of that evidence.

Counsel had numerous occassions [sic] to utilize the unused preemptory [sic] challenge to strike Morris, yet failed to do so, and Morris eventually served on petitioner's jury. Counsel's failure constitutes a prima facie showing of ineffectiveness, and prejudice must be presumed. However, petitioner contends that had counsel moved to strike Morris, the outcome of his trial would have been different.

(Dkt. 9, pp. 10-13).

The state trial court denied this claim (designated as ground 1A of the Rule 3.850

motion) in its written order rendered on August 9, 2001. Specifically, the state trial court,

in applying the *Strickland* standard to this ineffective assistance claim, held as follows:

In ground 1A, Defendant claims that during voir dire, juror number 20, Ms. Dorothy Morris, informed the Court that she or someone she knew had recently been the victim of a car theft, 10 years ago her husband and her father had been burglarized, and that the perpetrators were never caught.  Specifically, Defendant claims that counsel should have used a peremptory challenge due to Ms. Morris unequivocally voicing her personal presumptions of guilty until proven innocent.  The Florida Supreme Court adheres to the following <u>Lusk</u> test to determine juror competency:

> The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court.

<u>Pentecost v. State</u>, 545 So.2d 861 (Fla. 1989) <u>citing</u> <u>Lusk v. State</u>, 446 So.2d 1038, 1041 (Fla.) <u>cert.</u> <u>denied</u>, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).

The record reflects that when Ms. Morris was questioned regarding her ability to set aside bias and render a verdict based upon the evidence, the following answers were given:

THE COURT: I think you indicated in an earlier answer to one of the attorney's questions that you thought that the defendant must've done something wrong to bring him into the courtroom. Am I misconstruing what you said?

MS. MORRIS: No.

THE COURT: Okay. Can you – you think, having said that, that you can give the defendant a fair trial, start from the point where I start, assume that he's not guilty of these crimes, or do you think –

MS. MORRIS: Innocent until proven guilty.

THE COURT: Uh-hum. You feel comfortable with that?

MS. MORRIS: Uh-hum.

THE COURT: You know that it's the State's burden to prove beyond a

16

reasonable doubt that he's guilty, and until they do, he is not guilty; do you think you can —

MS. MORRIS:    Separate it?

THE COURT:    Are you comfortable with that?  Yeah?

MS. MORRIS:    Uh-hum.  Yes.

MR. MAIELLO[8]:    Ma'am, you also, um, indicated that, um, at some point, um, your - I think your - husband and your father-in-law had been tied up.  Um, do you think that experience at all would, um, would inhibit you, would maybe flow into your considerations in this case, um, this case dealing with the burglary of a home?  Um, do you think that particular, um - your experience - as unfortunate as it was - would somehow slip over into your consideration of the facts in this particular case?  I know I've spoken about it with you.

MS. MORRIS:    I mean, it - it wouldn't - it wouldn't effect my judgment.  I mean we all - you hear about it everyday, I don't think it would affect the facts.

MR. MAIELLO:    Okay.  Okay.  And maybe I - and - and -

MS. MORRIS:    The life experience?

MR. MAIELLO:    Sure, oh sure.  Absolutely.  Um, the other thing I want to do is just follow up on what the Judge just, um, asked you about.  When you said, well, he must've done something, um, you're very [sic] intelligent lady, obviously; like what - what - can you maybe elaborate or articulate that a little further?

MS. MORRIS:    Well, you just don't get arrested for standing on the street corner.  I mean, it is one of those things where whenever we starting [sic] talking about how the charges affected you - there

---

[8] Pearson was represented at trial by attorney Thomas A. Maiello of the Public Defender's Office.

is a lot - I mean, to separate it and say, [t]his is what I am gonna think about, you can do that; but at [sic] my first opinion, it did affect me then.  I mean -

MR. MAIELLO:     Okay.  Do you think that initial sort of bi - initial inclination, if you will, um, would anyway, um - that you would - you might get that in - that similar - a similar inclination, even though you're trying very hard to separate it, during the course of the trial or even, you know, at anytime when you're listening to - the testimony?

MR. ALLEN[9]:     Judge, I'm gonna object; she's already answered the question.  Um, I mean -

THE COURT:     Yeah.

MR. MAIELLO:     Just generally, do you think - do you think, um, you may - you may ever feel that way during the course of the trial when you start hearing evidence, um, keeping in mind he is presumed innocent until the trial is over, um, and you - and you do deliberate.  Do you think your initial inclination that he must've done something wrong, do you think in any way that would - that would come into play while you're listening to evidence?

MS. MORRIS:     I don't think it would prejudice me; you know, it's kind of a thing when like Joan Benet (phonetic) and everybody goes, [o]h, the parents did it.  You don't have any proof, you know, you just have that first - but until you sit down in court, you don't know.

MR. MAIELLO:     Okay.

THE COURT:     Do you think you have an open enough mind so that you can listen to all the evidence and base whatever your decision is only on the evidence that's being presented to you.  And if the State doesn't meet it [sic] burden, could you find the defendant not guilty?

---

[9] The State was represented at trial by Assistant State Attorney Curtis L. Allen.

MS. MORRIS:        If they didn't - if they didn't prove it.

(See August 31, 1998 Transcript, pages 168-173, attached). After reviewing the Motion, the transcript, the Court file, and the record, the Court finds that Ms. Morris met the Lusk standard for juror competency and any alleged deficient conduct on the part of trial counsel did not result in prejudice. As such, Defendant has failed to meet the second prong of Strickland. Since Defendant has failed to meet the second prong of Strickland, it is unnecessary to address the performance component. As such, no relief is warranted upon ground 1A.

(Dkt. 13, Ex. 7). Thus, to establish that he is entitled to relief on this claim, Pearson must show that the state trial court incorrectly applied the *Strickland* standard in reaching its determination that this claim lacks merit. He has not made this showing.

The record supports the state trial court's finding and Pearson does not argue to the contrary. Pearson does not offer any legal support for his claim, nor does he demonstrate or even allege that the state trial court's application of the *Strickland* standard was erroneous. Just as in his Rule 3.850 motion, Pearson has not made any showing that counsel's failure to use the peremptory challenge to strike Morris prejudiced him in any way such that the jury would not have convicted him. *See Strickland*, 466 U.S. at 694. "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Moreover, whether to exercise a peremptory challenge is a matter left to the discretion of trial counsel. *See Cook v. Moore*, 2005 WL 2416038 at *7 (M.D. Fla., Sept. 20, 2005). "Decisions on selection of a jury are among the many entrusted to counsel rather than to defendants personally." *Id.* (citing *United States v. Boyd*, 86 F.3d 719, 723 (7th Cir. 1996). Pearson has failed to establish that the state trial court's denial of this claim

19

of ineffective assistance of trial counsel was contrary to or an unreasonable application of the *Strickland* standard or resulted in a decision that is based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Thus, relief on this ground will be denied.

## Ground Four

Pearson claims in Ground Four that his attorney was ineffective in failing to conduct an adequate investigation and in failing to present evidence and witnesses to support his theory of defense. In support of this claim, Pearson presents the following facts:

> Petitioner was on federal probation and had been scheduled by his probation supervisor, Maria Rodriguez, to be admitted to an in-patient drug program on October 28, 1997, which was the Monday following the day of the burglary. Ms. Rodriguez told him he needed to take care of all personal matters before the 28th. Time Warner was a business petitioner had previously worked [sic], it was located approximately four blocks from the burglary incident. Petitioner had driven to Time Warner around the time of the burglary to pickup [sic] his W2 form. Time Warner has a vehicle security check point where the petitioner had to identify himself, state his business, and wait for verification prior to gaining entrance into the parking lot.

> Codefendant Barry Mason, who is the son of petitioner's exgirlfriend [sic], was with him. Inside Time Warner, another security guard asked petitioner for his name and his reason for being there. Petitioner told him he needed to see Mr. Michael Jackson, who was his supervisor during his time of employment there. The guard then instructed him to empty his pockets into a plastic tray, and walk through a medal [sic] detector. As he had began emptying his pockets, he remembered he had a small baggie of marijuana. Because of the marijuana, petitioner told the guard he need [sic] to go back outside to his Bronco.

> Once outside, petitioner sat with Time Warner employees at a cement picnic table located in the parking lot, because his Bronco was gone. From the cement table, petitioner could see the intersection through which he had to travel in order to enter Time Warner property. While watching this entersection [sic], petitioner observed his Bronco come through the intersection, stop, backup, and turn down a street leading away from Time Warner. At this point the petitioner sat and thought for a moment, then decided to go look and see if his Bronco was in sight from the

20

intersection.  Petitioner left Time Warner's property by jumping over the property fence.  Upon arriving at the intersection, petitioner saw his Bronco three blocks down the road, and began walking towards it.

When he approached his Bronco, Mason was coming from around the corner of a home.  Mason was initially startled by the petitioner's presence, but then began asking petitioner to help him.  Petitioner refused and said he (Mason) could not do this.  Mason and petitioner began arguing, and petitioner began returning items back to the house.  Mason eventually pushed petitioner, at which time petitioner demanded the keys to his Bronco.  Mason complied, and petitioner entered the Bronco and started the engine.  Mason started yelling and repeating, "What are you going to do, leave me?"  Petitioner could not bring himself to leave Mason, so he exited the vehicle and started walking away.  Petitioner was a drug addict, and knew he would not be able to reason with Mason, who was also an addict.

Petitioner further stated that the security guard at the entrance, the guard inside, supervisor Michael Jackson, employees at the parking lot bench, and probation officer Maria Rodriguez could all establish and verify his statement.

Counsel did not investigate the aforementioned statement.  However, he did obtain an arial [sic] photograph of the area.  Counsel stated on record that he had made some phone calls, but that he did not go to the location until after the trial had started.  The State argued prejudice because counsel had waited until the middle of trial to go to the scene and create (discover) new theories.

The court held that the investigation could have and should have been done prior to trial, and counsel agreed.  Counsel later stated that his investigator Mr. Angelo merely got an arial [sic] photograph; he never did any independent investigation.

However, the court stated that counsel's investigator never went to the Time Warner area and that counsel never asked him to.  Counsel said that the court's assessment of the situation was correct.

The State argued that any evidence about Time Warner would bolster the testimony of codefendant Mason, which exonerated petitioner.  After counsel's concession that he had erred, and that his error constituted a Brady violation, he simply rested petitioner's case without further investigation or presentation of evidence and/or witnesses who would have verified petitioner's reasonable alternative theory of the States [sic] circumstantial evidence.

Mason had been convicted of the burglary, and numerous other felonies.  He had

also initially given an incriminating statement concerning the petitioner. Therefore, counsel's failures denied petitioner of his only defense.

(Dkt. 9).

Pearson presented this claim to the state trial court in his supplemental Rule 3.850 motion.[10] (Dkt. 13, Ex. 6). In its order rendered on August 9, 2001, the state trial court found as follows with respect to this claim (designated as ground 1B of Pearson's post-conviction motion by the state trial court):

> In ground 1B, Defendant claims ineffective assistance of counsel due to counsel's failure to investigate witnesses. Specifically, Defendant names the security guard at the entrance, the security guard inside, supervisor Michael Jackson, employees at the parking lot bench, and probation officer Maria Rodriguez, which would verify the truth of Defendant's statements. In cases involving claims of ineffective assistance of counsel for failure to investigate and interview witnesses, facially sufficient postconviction motions must include: identity of prospective witnesses; substance of witnesses ['] testimony; and explanation as to how omission of such evidence prejudiced outcome [sic] of the trial. Highsmith v. State, 617 So.2d 825 (Fla. 1st DCA 1993). However, as to the security guard at the entrance, the security guard inside, and the employees at the parking lot bench, Defendant has failed to specifically identify the aforementioned individuals. As such no relief is warranted with respect to these alleged individuals. After reviewing the Motions, the court file, and the record, the Court is unable to conclusively refute ground 1B of the Defendant's Motion with respect to supervisor Michael Jackson and the probation officer Maria Rodriguez. As such, the Office of the State Attorney should respond to ground 1B of the Defendant's Motion with respect to supervisor Michael Jackson and probation officer Maria Rodriguez.

(Dkt. 13, Ex. 7). This claim was addressed at the evidentiary hearing on Pearson's post-conviction motions. (Dkt. 13, Exs. 7, 9). Following the evidentiary hearing, the state trial court entered a written order denying the claim in which it held as follows:

> In ground 1b, Defendant claims ineffective assistance of counsel due to counsel's

---

[10] Pearson presents the identical claim and supporting facts in the instant § 2254 petition as he presented in his supplemental Rule 3.850 motion.

failure to investigate witnesses. Specifically, Defendant alleges that counsel should have called probation officer Maria Rodriguez and supervisor Michael Jackson to verify the truth of Defendant's statements. As to Defendant's allegation involving failure to call probation officer Maria Rodriguez, Defendant withdrew this portion of his claim at the April 23, 2003 evidentiary hearing. (See April 23, 2003 Transcript, pages 12-13 attached). As such, no relief is warranted upon ground 1b as it related to the allegation involving Maria Rodriguez.

As the Defendant's allegation regarding supervisor Michael Jackson, a review of the April 23, 2003 transcript reflects that Rosalie Bolin, a private investigator hired by the defense, could not find or verify that Michael Jackson ever worked at Time Warner. (See April 23, 2003 Transcript, pages 9-13, attached). Additionally, Defendant testified that he did not see Mr. Jackson on the day of the burglary, but rather he was signed in by a security guard who paged Mr. Jackson as a result of Defendant arriving at Time Warner. (See April 23, 2003 Transcript, pages 29-31, attached). Mr. Thomas Maiello, former counsel for Defendant[11], testified that he did not recall whether or not Defendant asked him to contact Mr. Jackson. (See April 23, 2003 Transcript, pages 64-67, 76-77, attached). Citing Gaskin v. State, 737 So.2d 509, 514 (Fla. 1999), the State correctly notes in its Supplemental Response that during an evidentiary hearing, a defendant has the burden to come forward with witnesses to substantiate the allegations raised in his motion for postconviction [sic] relief. (See State's Response, filed May 7, 2003, attached). Accordingly, the Court finds that Defendant has failed to provide this Court with information substantiating his claims. Therefore, Defendant has failed to demonstrate how counsel performed deficiently pursuant to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As such, no relief is warranted upon ground 1b.

(Dkt. 13, Ex. 11).

Pearson's claims are not exhausted and are therefore procedurally barred. First, as to his allegations relating to Maria Rodriguez, the record reflects that he withdrew this claim of his Rule 3.850 motion at the evidentiary hearing.[12] As to his allegations relating

---

[11] Pearson was represented at the evidentiary hearing by attorney Buddy Gissendanner, III.

[12] The transcript of the Rule 3.850 evidentiary hearing shows the following exchange:

> MR. ALLEN:  And, Judge, just for clarification, there is actually two parts or two grounds.  (B) [sic] There is a Michael Jackson and a Maria Rodriguez and I think counsel is going to withdraw the ground as to Maria Rodriguez; is that correct?  Or, have you denied [sic] to pursue that ?

to Michael Jackson, a review of the record shows that Pearson did not pursue this claim on appeal of the denial of his Rule 3.850 motion.

In Florida, exhaustion of claims raised in a Rule 3.850 motion includes an appeal from the denial of the motion. *See Leonard*, 601 F.2d at 808 (Florida state remedies are exhausted after appeal to the district court of appeal from denial of a collateral attack upon a conviction). More specifically, when a Rule 3.850 motion has been denied after an evidentiary hearing, the applicable state procedural rule provides a briefing schedule. *See* Fla. R. App. P. 9.141(b)(3)(C).[13] Pursuant to Florida procedural rules, submission of a brief without an argument on a particular issue results in a waiver of that issue in an appeal of an order denying relief after an evidentiary hearing. *See Meija v. Sec'y, Dep't of Corr.*, 2006 WL 3133755 at *6 (M.D. Fla., Oct. 31, 2006); *see also Duest v. Dugger*, 555 So.2d 849 (Fla. 1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.").

Although Pearson pursued an appeal of the denial of his Rule 3.850 motion, he

---

MR. GISSENDANNER: That would be correct.

 THE COURT:   Okay. So that is being withdrawn as to Maria Rodriguez.

(Dkt. 13, Ex. 9, pp. 1323-24).

 [13] This rule provides in relevant part:

 (3) *Grant or Denial of Motion after Evidentiary Hearing*

  (C) Briefs. Initial briefs shall be served within 30 days of service of the record or its index.

Fla. R. App. P. 9.141(b)(3)(C) (emphasis in original).

raised only two claims; neither of which are the claims presented in Ground Four of the instant § 2254 petition.[14]  Given that Pearson's post-conviction appeal was from a Rule 3.850 order after an evidentiary hearing, Pearson was obliged to file an initial brief upon appeal of the denial of post-conviction relief. *See* Fla. R. App. P. 9.141.  His appellate counsel's decision to pursue only two claims on appeal operated to waive and abandon the remaining claims raised in Pearson's underlying post-conviction motion.

A petitioner's claims or portions of claims that are not exhausted but would clearly be barred if returned to state court must be dismissed. *See Coleman*, 501 U.S. at 735; *Tower*, 7 F.3d at 210.  Here, it would be futile to dismiss the case to give Pearson the opportunity to exhaust these claims because they could have and should have been raised on appeal during the Rule 3.850 proceedings. *See Darity v. McDonough*, 2006 WL 2792891 at *9 (M.D. Fla., Sept. 27, 2006).  "An issue that was not properly presented to the state court which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review."   *Cobbs v.*

---

[14] In his appeal from the denial of his post-conviction motion, Pearson raised the following two issues:

**POINT ON APPEAL**

I.

WHETHER THERE WAS COMPETENT SUBSTANTIAL EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDING THAT TRIAL COUNSEL PROVIDED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO CALL A DEFENSE WITNESS?

II.

WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT WAS NOT PREJUDICED BECAUSE A BIASED JUROR ACTUALLY SERVED ON THE PANEL?

(Dkt. 13, Ex. 12, p. 8) (emphasis in original).  The witness referred to in Pearson's Claim I on appeal was Gloria Watson.  No reference to Maria Rodriguez or Michael Jackson appeared in Pearson's appellate brief.

*McDonough*, 2006 WL 2092381 at *8 (M.D. Fla., July 26, 2006) (citing *O'Sullivan*, 526 U.S. at 839-40, 848).  Thus, this Court cannot consider Pearson's claims unless he can make a showing that the cause and prejudice or the fundamental miscarriage of justice exception is applicable. *See Jones*, 256 F.3d at 1138; *O'Sullivan*, 526 U.S. at 845-6.

Pearson has not demonstrated cause or prejudice that would excuse his default. Moreover, he has neither alleged nor shown that the actual innocence exception applies. Absent such a showing, a federal habeas court should not discuss the merits of a claim that has been procedurally defaulted in state court. *See Surrency v. Hadi*, 2006 WL 3469534 at *6 (M.D. Fla., Nov. 30, 2006) (citing *Kight v. Dugger*, 50 F.3d 1539, 1543 (11th Cir.1995)). Accordingly, Ground Four of the instant petition is procedurally barred and relief will be denied. *See Amoroso v. McDonough*, 2006 WL 2507618 at *3 (M.D. Fla., Aug. 29, 2006); *Kelley*, 377 F.3d at 1344.

**Ground Five**

Pearson contends that his trial counsel was ineffective in failing to call Gloria Watson ("Watson") as a witness at trial and that such failure denied him the opportunity to present exculpatory evidence.  He alleges that counsel's failure to "seek clarity with Mrs. Watson's minor contradictory deposition statements constituted a failure to adequately investigate and prepare [his] case for trial."  Pearson further alleges that the "combined effect of Mrs. Watson's testimony with the Time Warner witnesses would have established the fact that petitioner was not present during the initiation of the burglary.  Had counsel properly presented this testimony, the outcome of the trial would have been different."

Pearson relies upon the following facts to support this claim:[15]

On January 23, 1998, Gloria Watson was deposed. She stated that she was waiting in a car approximately 150 feet from the burglarized home. She heard banging noises, and started looking around to see where it was coming from. She looked across the street and saw a guy who was kicking a window. She only saw one black male wearing a long sleeve shirt, with a heavy build. The window did not go all the way down to the ground, but it was low. The glass eventually busted from the black male's kicks. He went through the window and carried out two TVs, and what looked like a VCR, stereo equipment, and some electrical stuff.

The burglar was driving a "Bronco, Blazer type truck." She had recently had surgery and couldn't walk, so she started hollering for someone to call the police. When the police pulled up the guy jumped into the Bronco and took off. The owner of the house walked over to her car and was histerical [sic]. She talked with the owner, left her phone number and said to call her if she could be of any help.

(Dkt. 9, p. 18). This claim was raised in Pearson's Rule 3.850 motion and on appeal of the

denial of that motion. This claim is exhausted and properly before the Court.

Notwithstanding, Pearson is not entitled to relief on this claim.

In its final written order denying relief following the evidentiary hearing on the post-

conviction motion, the state trial court held as follows with respect to this claim (designated

as ground 1c of the Rule 3.850 motion):

In ground 1c, Defendant alleges counsel was ineffective for failing to seek clarity of Mrs. Watson's contradictory deposition statements by calling her as a witness during trial. At the evidentiary hearing, Mr. Maiello testified that he did not remember any specific conversations regarding the calling or not calling of Ms. Gloria Watson as a witness at trial. However, Mr. Maiello did say that if Defendant wanted a particular witness called, and even if he did not think it was a good idea to call that witness, he probably would have called that witness. (See April 23, 2003 Transcript, pages 56-57, attached). Additionally, Mr. Maiello testified that it is a strategic decision to call or not call witnesses to testify at trial, but that if a client vehemently objected to

---

[15] The Court notes that these facts were presented in Ground Four of the instant petition. However, to the extent that the claim raised in Ground Five specifically addresses Gloria Watson, the Court will consider these facts in support of Ground Five. See Dkt. 9, pp. 18-21.

his advice, he would have probably conducted a colloquy outside the presence of the jury to note this divergence of opinions on the record. (See April 23, 2003 Transcript, pages 59-61, attached). Based upon the testimony presented at the April 23, 2003 evidentiary hearing, this Court finds that Mr. Maiello's decision to not call Ms. Watson at trial constituted trial strategy. "Counsel's strategic decisions will not be second-guessed on collateral attack." Johnson v. State, 769 So.2d 990, 1001 (Fla. 2000). Accordingly, this Court finds that Defendant has failed to demonstrate how counsel performed deficiently pursuant to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As such, no relief is warranted on ground 1c.

(Dkt. 11, p. 1197). A review of the record supports the state trial court's finding.

At the evidentiary hearing, Maiello testified in relevant part as follows:

MR. ALLEN:      And during the course of the trial, did you become aware of a witness by the name of Gloria Watson, a witness out front that was present, but did not – never called by you at trial?

MR: MAIELLO:   I know there was a witness named Gloria Watson.  I don't recall the specifics.

MR. ALLEN:      Let me ask you this.  The Defense has – well, you have had a chance to look at the motion and talked to Mr. Gissendanner and, in fact, have looked at some transcripts?

MR. MAIELLO:   Yes, I have.  Generally looked over some transcripts.

MR. ALLEN:      And there was an allegation regarding a Gloria Watson, a witness who purportedly saw only one person in front of the residence; is that correct?

MR. MAIELLO:   I don't recall exactly what her testimony was.

MR. ALLEN:      Do you remember making a strategic decision about the calling of witnesses with Mr. Pearson as to whether or not to call certain people in his particular case?

28

MR. MAIELLO: I'm sure I did.  I don't remember the specific conversations.  I don't remember any specific conversations regarding this particular witness, but I'm sure I did.

MR. ALLEN: Let me ask you this way.  If Mr. Pearson at any time told you he wanted a witness called, would you have called them?

MR. MAIELLO: I suppose I would have.

MR. ALLEN: And let's say a witness is sitting there and he says, I want this person called, would you have said, no, I'm not going to call her, I don't care what you want?

MR. MAIELLO: I think that's one of those major type decisions I would have even – if I disagreed with any particular client, if that was a decision that they wanted to go with, even if it was against my advice, I would have probably done it.

   . . .

MR. ALLEN: The decision to call or not call the witness, in a particular case, is that a strategic decision that you make as an attorney on a particular case?

MR. MAIELLO: Yes.

   . . .

MR. ALLEN: And if the client had insisted upon calling a witness that was against your strategic views, would you have conducted a colloquy on the record outside the presence of the jury, that this was the client's choice, but against your wishes?

MR. MAIELLO: Yes, and I have done that in the past.

MR. ALLEN: And if the transcript fails to reflect that in this particular case, would that indicate based on your practice and procedure, that no such request was made or no such objection was made to the not [sic] calling of a particular witness, that's probably a

29

horribly worded question, let me ask it again.

If there is an absence in the record of such a colloquy, would that indicate to you based on your practice of law and your usual procedures that there was no dispute about who would be called or not called during the course of the presentation of the case?

MR. MAIELLO:      It depends on how proliferous an objection or how proliferously the client wanted to call a particular witness. If it was over my advice, I mean, I don't recall any specific conversations with Mr. Pearson regarding calling or not calling of witnesses. However, if the client was adamant about calling a particular witness against my advice, yes, I probably conducted a colloquy outside of the presence of the jury. So it is not on the transcript, I'm not sure what conclusion you can draw from that.

(Dkt. 13, Ex. 11, pp. 1266-67, 1269-71).

In the instant petition, Pearson has not presented anything new to support his claim. He does not claim in his § 2254 petition that he requested Maiello to call Watson as a witness at trial. Rather, he makes a generalized and conclusory argument that, had counsel called Watson, the outcome of the trial would have been different. Pearson has not presented any factual evidence to demonstrate that in the absence of counsel's alleged error, the jury would not have convicted him. At the evidentiary hearing on the Rule 3.850 motion, trial counsel articulated to the state trial court the underlying reasons behind his tactical decisions. Pearson has not demonstrated that counsel's decision not to call Watson as a witness was anything other than trial strategy. Disagreements by a defendant with tactics and/or strategies will not support a claim of ineffective assistance of counsel; and, a petitioner in habeas corpus must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy. *See Norman v. Bradshaw*, 2006 WL

30

3253121at *10 (N.D. Ohio, Nov. 8, 2006) (*citing Strickland*, 466 U.S. at 689; *United States v. Perry*, 908 F.2d 56,59 (6th Cir. 1990)).  Pearson has failed to establish that the state trial court's denial of this claim of ineffective assistance of trial counsel was contrary to or an unreasonable application of the *Strickland* standard or resulted in a decision that is based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).  Therefore, Pearson is not entitled to habeas relief on this ground.

**Grounds Six, Seven, Eight, Nine and Ten**

In Ground Six of the instant petition, Pearson alleges his trial attorney was ineffective in failing to impeach the State's expert witness.  In Ground Seven, he alleges his trial attorney was ineffective in failing to adequately argue that the State's attorney lost evidence. In Ground Eight, Pearson contends that his trial attorney was ineffective in failing to inform him of his right to be present during jury selection.  In Ground Nine, he contends that his conviction was obtained in violation of his right to a fair and impartial trial.  Finally, in Ground Ten, Pearson claims his conviction was obtained in violation of his right to a presumption of innocence.

A review of the record shows that Pearson raised Grounds Six and Eight of the instant petition in his Rule 3.850 motion and his Supplemental Motion for Post-Conviction Relief.  (Dkt. 13, Ex. 5).  However, he did not present either of these claims to the state court on appeal of the denial of the post-conviction motions.  Pearson did not present Grounds Seven, Nine and Ten to the state courts in either of his motions for post-conviction relief or on direct appeal.  Consequently, all of these grounds are unexhausted and procedurally barred from review by this Court.

Because Pearson could have preserved and raised as federal constitutional claims his allegations raised in Grounds Nine and Ten of the instant petition that his conviction was obtained in violation of his right to a fair and impartial trial and that his conviction was obtained in violation of his right to a presumption of innocence on direct appeal, he was precluded from doing so collaterally in a Rule 3.850 motion for post-conviction relief. *See Childers* 782 So.2d at 947. This issue is now procedurally barred from review in the state courts because the state procedural rules do not provide for a second direct appeal. As to his claims of ineffective assistance of counsel presented in Grounds Six and Eight, he cannot now return to state court to pursue these claims, as a second Rule 3.850 motion would be subject to dismissal as an untimely and successive petition. *See Taylor*, 2007 WL 189389 at *13; Fla. R. Crim. P. 3.850(b), (g). As to Ground Seven, it does not appear from the record the he has pursued this claim in the state courts and thus it is not exhausted. Like the claims presented in Grounds Six and Eight, Pearson could not return to the state trial court to present this claim in a second successive Rule 3.850 motion.[16] Thus, this Court cannot consider Grounds Six through Ten unless Pearson can make a showing that the cause and prejudice or the fundamental miscarriage of justice exception is applicable. *See Jones*, 256 F.3d at 1138; *O'Sullivan,* 526 U.S. at 845-6.

Pearson does not present any argument to demonstrate cause or prejudice that would excuse his default as to any of these claims. Moreover, he has neither alleged nor shown that the fundamental miscarriage of justice exception applies. Absent such a

---

[16] Pursuant to Florida law, the proper procedural vehicle for an ineffective assistance of counsel claim is a motion for post-conviction relief under Fla. R. Crim. P. 3.850. *See Dennis v. State*, 696 So.2d 1280, 1282 (Fla. 4th DCA 1997); Fla. R. Crim. P. 3.850.

showing, a federal habeas court should not discuss the merits of claims that have been procedurally defaulted in state court. *See Surrency*, 2006 WL 3469534 at *6; *Kight*, 50 F.3d at 1543. Accordingly, Grounds Six, Seven, Eight, Nine and Ten of the instant § 2254 petition are procedurally barred and relief will be denied. *See Amoroso*, 2006 WL 2507618 at *3; *Kelley*, 377 F.3d at 1344.

Accordingly, the Court orders:

That Pearson's § 2254 petition is denied, with prejudice. The Clerk is directed to enter judgment against Pearson and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

33

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on _APRIL 4th_, 2007.


ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE


Counsel of Record
Robert Pearson

34